# Exhibit 1

October 10, 2025

Senior Director of FOIA Operations
The Privacy Office
U.S. Department of Homeland Security
245 Murray Lane SW
STOP-0655
Washington, D.C. 20528-0655
Email: foia@hq.dhs.gov

*Submitted via Secure Release*

**Re: FOIA Request For Individual-Level PERSIST Data From Department of Homeland Security Office of Homeland Security Statistics**

Dear Freedom of Information Officer:

Professors Graeme Blair, David Hausman, Elora Mukherjee, and the Deportation Data Project (jointly, the "Requesters"), through counsel, submit this Request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. This Request seeks spreadsheet data maintained by the Office of Homeland Security Statistics (OHSS) on the full lifecycle of immigration cases.[1] The result should be a spreadsheet or multiple spreadsheets in which rows correspond to persons and columns correspond to data.

Requesters also seek expedited processing, pursuant to 5 U.S.C. § 552(a)(6)(E) and 6 C.F.R. § 5.5(e), and a fee waiver, pursuant to 5 U.S.C. § 552(a)(4)(A) and 6 C.F.R. § 5.11(k). The justifications for expedited processing and the fee waiver are set out in detail following the Request.

## I.     Records Requested

This request seeks electronic spreadsheet data along with any existing explanatory notes needed to make the data intelligible. "Electronic spreadsheet data" means data in a spreadsheet format (such as .xls, .csv, or another standard electronic format) with a row in the spreadsheet for each individual or case. Depending on the database structure, there might be multiple rows for each of these events.

## A.   Data Requested

This request seeks *all nonexempt* categories of records in the PERSIST dataset. Exhibit A lists these categories in the section titled "Categories of Records in the System." This request does not seek any information that could reasonably lead to the identification of an individual. More

---

[1] The creation of the dataset is documented in a System of Records Notice, attached as Exhibit A, published in the Federal Register. *See* 85 Fed. Reg. 14223, March 11, 2020. These records are used to create a variety of reports, including the OHSS enforcement lifecycle reports. *See, e.g.*, https://www.dhs.gov/sites/default/files/publications/immigration-statistics/Special_Reports/Enforcement_Lifecycle/2020_enforcement_lifecycle_report.pdf.

specifically, the request does *not* seek any personally identifying information, such as name, identifying numbers, address, or date of birth, nor does it seek information that could indirectly lead to identification, such as information identifying a specific place of study or employer.

## B. Relevant Time Period

Please provide data covering the full period covered by all versions of the Persist Dataset **on the date on which DHS produces data** responsive to this request. If data from any part of this period are unavailable or burdensome to obtain, please contact me to discuss whether limitations to this period would be acceptable.

## C. Unique ID

Every database table produced in this request should include a column with the "[o]ne-time person-level identifier created and used by OIS to link records across datasets each time the data are matched." Exhibit A at 14224-25. Given that this identifier does not match across datasets and does not match any identifier used by noncitizens, it is nonexempt information. If, however, DHS determines that the identifier is exempt from disclosure, it must produce a new anonymized unique identifier that corresponds to each individual. Pursuant to the Second Circuit's decision for *ACLU Immigrants' Rights Project v. United States Immigration & Customs Enforcement*, 58 F.4th 643 (2d Cir. 2023), agencies such as DHS are required to replace exempt identifying numbers with anonymized unique identifiers. The Court has determined that unique IDs, because they are "meaningless in themselves," neither alter the content of exempt records nor constitute the creation of a new record.[2] Moreover, for the purposes of FOIA, requiring an agency to use a query to extract a particular requested arrangement or subset of data does not amount to the creation of a new record if the data is already maintained in the agency's database.[3]

## II. Application for Expedited Processing

Requesters seek expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E) and 6 C.F.R. § 5.5(e)(1). There is a "compelling need" for these records because the information requested is "urgen[tly]" needed by an organization primarily engaged in disseminating information "to inform the public concerning actual or alleged Federal Government activity." *See* 5 U.S.C § 552(a)(6)(E)(v)(II). Moreover, the requested records involve "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." 6 C.F.R. § 5.5(e)(1)(iv).

I affirm that the information supporting the request for expedited processing is true and correct to the best of my knowledge and belief. *See* 5 U.S.C. § 552(a)(6)(E)(vi); 6 C.F.R. § 5.5(e)(3).

---

[2] *Am. C.L. Union Immigrants' Rts. Project v. United States Immigr. & Customs Enf't*, 58 F.4th 643, 656 (2d Cir. 2023).

[3] *Id.* at 659.

### A. The records involve a matter of widespread and exceptional media interest raising possible questions about the government's integrity.

The requested records are the subject of widespread and exceptional media interest. 6 C.F.R. § 5.5(e)(1)(iv). In recent months, DHS has arrested, detained, and deported vast numbers of noncitizens across the United States. These immigration enforcement actions have been the subject of constant media attention and have unquestionably raised concerns amongst the broader public about the government's integrity and affected public confidence in the immigration enforcement systems.[4] Importantly, individual-level data about enforcement—such as the records requested here—have been crucial in accurately reporting on patterns in enforcement practices and who the administration is targeting for enforcement.

Indeed, on June 21, 2025, the Deportation Data Project posted similar data released to the Project by ICE under FOIA.[5] Concurrently, the Deportation Data Project released a codebook to help data analysts better understand the ICE enforcement data.[6] Dozens of reporters have reached out to the Deportation Data Project's team with questions about these data and how to use them. In the three weeks since the Deportation Data Project posted the data on its website, local, national, and international media outlets used the data over one hundred times to analyze and report changes in immigration enforcement in the early months of the new administration. **A non-exclusive list of 125 media articles citing the recent ICE enforcement data made public by the Deportation Data Project is included in Exhibit B (attached).**

There can be no question that expeditious release of this data will play a critical part in the public debate over immigration enforcement especially as the administration further expands its immigration enforcement apparatus.[7]

### B. The records sought are urgently needed to inform the public about actual or alleged government activity.

These records are urgently needed to inform the public about actual or alleged government activity. *See* 5 U.S.C. § 552(a)(6)(E)(v)(II); 6 C.F.R. § 5.5(e)(1)(ii). There is a compelling and urgent need to inform the public about the government's enforcement practices, including the change in enforcement under the new administration, which has been the subject of significant media and public attention in recent days.

The government has released some aggregate statistics about the recent trends in immigration enforcement,[8] but there is no regular public release of individual-level enforcement data despite

---

[4] Lydia Saad, "Surge in U.S. Concern About Immigration Has Abated," GALLUP, July 11, 2025, https://news.gallup.com/poll/692522/surge-concern-immigration-abated.aspx; Giselle Ruhiyyih Ewing, "Americans have made a U-turn on immigration since 2024 election," POLITICO, July 11, 2025, https://www.politico.com/news/2025/07/11/trump-immigration-crackdown-poll-00448342.

[5] Immigration and Customs Enforcement Data, Deportation Data Project, https://deportationdata.org/data/ice.html.

[6] ICE data documentation, Deportation Data Project, https://deportationdata.org/docs/ice.html.

[7] Laura Barrón-López, "GOP gives ICE massive budget increase to expand Trump's deportation effort," PBS NEWS HOUR, July 8, 2025, https://www.pbs.org/newshour/show/gop-gives-ice-massive-budget-increase-to-expand-trumps-deportation-effort.

[8] *See, e.g.*, "Under President Trump ICE Arrests Have Increased by 627%," U.S. DEPT. OF HOMELAND SECURITY, February 26, 2025, https://www.dhs.gov/news/2025/02/26/under-president-trump-ice-arrests-have-increased-627.

the critical public need to understand rapidly changing enforcement policies and practices.

As noted above, in recent weeks, over one hundred media outlets have used data posted by the Deportation Data Project to analyze and report changes in immigration enforcement this year. *See* Exhibit B (attached).

### C. *Requesters are primarily engaged in disseminating information in order to inform the public about actual or alleged government activity.*

Requesters are "primarily engaged in disseminating information" within the meaning of the FOIA. *See* 5 U.S.C. § 552(a)(6)(E)(v)(II); *see also* 6 C.F.R. § 5.5(e)(1)(ii).

The Deportation Data Project collects, analyzes, and posts public, anonymized U.S. government immigration enforcement datasets.[9] In addition to posting publicly available data on its website, the Deportation Data Project also uses the Freedom of Information Act to obtain datasets from federal government agencies.[10] Such data has been frequently used by journalists,[11] researchers,[12] lawyers and advocates,[13] and policymakers[14] in understanding immigration enforcement policies and practices. The Deportation Data Project's website and posting of government data are broadly circulated and widely available to the public at no cost. The Deportation Data Project

---

[9] Deportation Data Project, https://deportationdata.org/.

[10] Data Repository, Deportation Data Project, https://deportationdata.org/data.html.

[11] *See e.g.*, Maria Sacchetti, "Trump touted these ICE arrests. Half were already in prison," WASHINGTON POST, Apr. 3, 2025, https://www.washingtonpost.com/immigration/interactive/2025/trump-ice-arrests-prison-immigrants/; Maanvi Singh, "As deportations ramp up, immigrants increasingly fear Ice check-ins: 'All bets are off'" THE GUARDIAN, Apr. 6, 2025, https://www.theguardian.com/us-news/2025/apr/06/deportations-immigrants-ice-trump; Mica Rosenberg and Jeff Ernsthausen, "The New Effects of Immigration," PROPUBLICA, Oct. 21, 2024, https://projects.propublica.org/new-effects-of-immigration/; Monte Reel and Sinduja Ranarajan, "Thousands of detainees have been jammed into jails Biden vowed to close," BLOOMBERG, Oct. 25, 2024, https://www.bloomberg.com/features/2024-asylum-seekers-detention-centers/.

[12] *See e.g.*, David Hausman, "Sanctuary policies reduce deportations without increasing crime," PROCEEDINGS OF THE NATIONAL ACADEMY OF SCIENCES OF THE UNITED STATES OF AMERICA, October 19, 2020, https://www.pnas.org/doi/10.1073/pnas.2014673117; David Hausman, "Risk Assessment as Policy in Immigration Detention Decisions," JOURNAL OF LAW AND ECONOMICS (forthcoming 2025), https://www.david-hausman.com/_files/ugd/a3c925_b5f5dcc8168644d4ab942c5264138230.pdf; Anthony J. DeMattee, *et al*., "Burden and Standard Shifting in Immigration Bond Decisions," July 15, 2021, https://scholarblogs.emory.edu/jeffreystaton/files/2021/07/Tipping_the_Scales.pdf; Jeffrey S. Passel and Jens Manuel Krogstad, "What we know about unauthorized immigrants living in the U.S.," Pew Research Center, Jul. 22, 2024, https://www.pewresearch.org/short-reads/2024/07/22/what-we-know-about-unauthorized-immigrants-living-in-the-us/.

[13] *See e.g.*, American Immigration Council, "Beyond A Border Solution," May 3, 2023, https://www.americanimmigrationcouncil.org/research/beyond-border-solutions; Colleen Putzel-Kavanaugh and Ariel G. Ruiz Soto, "Shifting Patterns and Policies Reshape Migration to U.S.-Mexico Border in Major Ways in 2023," Migration Policy Institute, Oct. 2023, https://www.migrationpolicy.org/news/border-numbers-fy2023; David J. Bier, "Border Patrol: 70 Percent Drop in Successful Evasions Since Title 42 Ended," Cato Institute, Mar. 4, 2024, https://www.cato.org/blog/border-patrol-70-drop-successful-evasions-title-42-ended.

[14] *See e.g.*, "Why We Need a New Way Forward," https://newwayforwardact.org/wp-content/uploads/2023/02/2023-NWF-backgrounder.pdf; "Pressley, García, Casar Re-Introduce the New Way Forward Act," Mar. 29, 2023, https://pressley.house.gov/2023/03/29/pressley-garcia-casar-re-introduce-the-new-way-forward-act/.

also publishes analysis of the datasets it receives–for example, in the Data Guide posted on its website.[15]

Professor Blair is a professor of political science at the University of California Los Angeles. Professor Hausman is an assistant professor of law at the University of California Berkeley School of Law. Professor Mukherjee is the Jerome L. Greene Clinical Professor of Law and Director of the Immigrants' Rights Clinic at Columbia Law School. Professors Hausman and Blair serve as Co-Directors and Professor Mukherjee serves as a Faculty Fellow at the Deportation Data Project.[16] They regularly publish scholarship and articles, which are broadly circulated and widely available to the public at no cost.[17]

Requesters intend to similarly analyze, publish, and disseminate to the public information gathered through this Request. The records requested are not sought for commercial use, and the Requesters plan to disseminate the information disclosed as a result of this Request to the public at no cost.

Given the foregoing, the Request satisfies the requirements for expedited processing. Pursuant to applicable statutes and regulations, Requesters expect a determination regarding expedited processing within 10 days. *See* 5 U.S.C. § 552(a)(6)(E)(ii)(I); 6 C.F.R. § 5.5(e)(4).

### III.    Fee Waiver Request

Requesters request that any fees associated with responding to their FOIA Request be waived pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) and 6 C.F.R. § 5.11(k). Under 5 U.S.C. § 552(a)(4)(A)(iii) and 6 C.F.R. § 5.11(k), fees should be waived or reduced if disclosure is (1) in the public interest because it is "likely to contribute significantly to public understanding of the operations or activities of the government" and (2) "not primarily in the commercial interest of the requester." Disclosure in this case meets both of these tests.

#### A.  *Disclosure is in the public interest as it is likely to contribute significantly to the public's understanding of the operations and activities of government.*

*First*, disclosure pursuant to this Request is in the public interest. As set forth above, this Request seeks to bolster public understanding of DHS practices with respect to the immigration enforcement and benefits processes, which directly affect hundreds of thousands of noncitizens and legal, humanitarian, and advocacy groups that serve them, and which is of interest to the general public.

The public interest fee waiver provision "is to be liberally construed in favor of waivers for noncommercial requesters." *McClellan Ecological Seepage Situation v. Carlucci*, 835 F.2d 1282,

---

[15] Deportation Data Project, *U.S. Immigration Enforcement Data: A Short Guide*, March 5, 2021, https://deportationdata.org/guide.html; *see also* Deportation Data Project, *ICE data release: mid-November 2023 through mid-February 2025*, March 21, 2025, https://deportationdata.org/news/2024-03-21-ICE-release.html.
[16] *See* Deportation Data Project, *About the Deportation Data Project*, https://deportationdata.org/about.html.
[17] *See e.g.*, David Hausman, *Research*, https://www.david-hausman.com/research; Graeme Blair, *Writing*, https://graemeblair.com/#!research; Elora Mukherjee, Columbia Law School, https://www.law.columbia.edu/faculty/elora-mukherjee.

1284 (9th Cir. 1987). The question relevant to fee waivers is whether the requested information is likely to contribute significantly to public understanding of the operations or activities of the government, good or bad. *See Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1314 (D.C. Cir. 2003). Disclosure of the documents sought is in the public interest and will contribute significantly to the public's understanding of the government's practices regarding immigration enforcement.

### B. *Disclosure is not primarily in the commercial interest of the Requesters.*

*Second*, Requesters are not filing this Request to further a commercial interest. Requesters intend to make any relevant information obtained through this FOIA Request available to the public. Requesters plan to analyze, publish, and disseminate to the public the information gathered through this Request at no cost.[18] As explained above, the Deportation Data Project publishes, analyzes, and disseminates information, including datasets obtained through the Freedom of Information Act. Professors Blair, Hausman, and Mukherjee regularly publish scholarship, articles, and other materials that are disseminated to the public and widely available to everyone at no cost.

Should the request for a full fee waiver be denied, Requesters seek a limitation of processing fees pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II) ("[F]ees shall be limited to reasonable standard charges for document duplication when records are not sought for commercial use and the request is made by . . . educational or noncommercial scientific institution . . . or a representative of the news media.") and 6 C.F.R. § 5.11(d)(1) (search fees shall not be charged to "representatives of the news media"). Requesters intend to make use of the information in educational opportunities they offer to students and faculty, and they intend to disseminate the information gathered by this Request to the public, including journalists, researchers, lawyers, and policymakers, at no cost, including through the Deportation Data Project's website.

### IV. Request for Records in Electronic Format

Requesters request that responsive electronic records be provided electronically in their native file format, if possible. *See* 5 U.S.C. § 552(a)(3)(B); *Scudder v. Cent. Intelligence Agency*, 25 F. Supp. 3d 19 (D.D.C. 2014) ("When an agency already creates or converts documents in a certain format . . . requiring that it provide documents in that format to others does not impose an unnecessarily harsh burden, absent specific, compelling evidence as to significant interference or burden.") (quoting *TPS, Inc. v. Dep't of Defense*, 330 F.3d 1191 (9th Cir. 2003)). Alternatively, Requesters request that the records be provided in an electronic spreadsheet format. If records are produced on physical media, please furnish the records to:

> Law Office of Amber Qureshi, LLC
> 6925 Oakland Mills Rd, PMB #207,
> Columbia, MD 21045

---

[18] *See* 6 C.F.R. § 5.11(k)(1)(ii); 6 C.F.R. § 5.11(k)(3).

***

If this FOIA Request is denied in whole or in part, please provide the reasons for the denial, pursuant to 5 U.S.C. § 552(a)(6)(A)(i). In addition, please release all segregable portions of otherwise exempt material in accordance with 5 U.S.C. § 552(b).

Thank you for your consideration of this Request. If you have any questions or concerns, please do not hesitate to contact me at amber@qureshilegal.com.

I affirm that the information supporting the request for expedited processing is true and correct to the best of my knowledge and belief. *See* 5 U.S.C. § 552(a)(6)(E)(vi); 6 C.F.R. § 5.5(e)(3).

Sincerely,

Amber Qureshi
Law Office of Amber Qureshi, LLC
6925 Oakland Mills Rd, PMB #207,
Columbia, MD 21045
Tel: (443) 583-4353
Email: amber@qureshilegal.com

*Counsel for Requesters*