Laboni A. Hoq (CA SBN #224140)
*Email: laboni@hoqlaw.com*
Hoq Law APC
P.O. Box 753
South Pasadena, CA 91030
Telephone: (213) 973-9004

Amber Qureshi*
*Email: amber@qureshilegal.com*
Law Office of Amber Qureshi, LLC
6925 Oakland Mills Rd, PMB #207,
Columbia, MD 21045
Telephone: (443) 583-4353

* Admitted *pro hac vice*

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GRAEME BLAIR,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY,<br><br>Defendant. | No. 2:26-cv-00417-PD<br><br>**PLAINTIFF'S NOTICE OF CROSS-MOTION AND CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES; [PROPOSED] ORDER**<br><br>Hearing Date:   October 2, 2026<br>Hearing Time:   9:30 a.m.<br>Ctrm:            580<br><br>Honorable Patricia Donahue<br>United States Magistrate Judge |

## NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

PLEASE TAKE NOTICE that on October 2, 2026, at 9:30 a.m., Plaintiff Graeme Blair will, and hereby does, move this Court for entry of partial summary judgment pursuant to Federal Rule of Civil Procedure 56. This motion is made before the Honorable Patricia Donahue, United States Magistrate Judge, Courtroom 580, Edward R. Roybal Federal Building and United States Courthouse, 255 East Temple Street, Los Angeles, California 90012.

Plaintiff brings the motion because there are no genuine triable issues of material fact and Plaintiff is entitled to judgment as a matter of law as to Defendant's unlawful withholding of agency records responsive to Plaintiff's request under the Freedom of Information Act. This Motion is based upon this Notice, the attached Memorandum of Points and Authorities, Plaintiff's Statement of Uncontroverted Facts, Plaintiff's Statement of Genuine Issues of Material Fact, the Declaration of Graeme Blair, the Declaration of Cory McCartan, the Declaration of Amber Qureshi and the exhibit attached thereto, [Proposed] Order, all pleadings, records, and other documents filed in this action, and upon such oral argument as may be presented at the hearing of this motion.

This motion is made after the conference of counsel as required by Local Rule 7-3, which took place on May 13 and 28, 2026.

Dated: August 6, 2026        Respectfully submitted,

LAW OFFICE OF AMBER QURESHI, LLC
HOQ LAW APC

By: */s/ Amber Qureshi* _____
     AMBER QURESHI
     Attorneys for Plaintiff

i

## **TABLE OF CONTENTS**

I.  INTRODUCTION ...........................................................................................................1

II.  STATEMENT OF FACTS ............................................................................................3

    A.  Individual-Level Immigration Datasets Are Critical for Informing the Public About the Federal Government's Immigration Actions. ...................3

    B.  Agencies Routinely Release Individual-Level Datasets, Like Persist, to the Public. .........................................................................................5

    C.  DHS Is Withholding Records Responsive to Professor Blair's FOIA Request, Which Does Not Seek Identifiable Information. ..........................5

III.  LEGAL STANDARD....................................................................................................6

IV.  ARGUMENT .................................................................................................................7

    A.  DHS's Blanket Withholding is Unprecedented and Legally Erroneous. ....................................................................................................7

    B.  Exemption 6 Does Not Apply to Professor Blair's Request.......................10

        1.  The Privacy Interest is *De Minimis* Once PII is Redacted. .............11

        2.  Disclosure of the Requested Records Would Advance a Significant Public Interest. ..............................................................16

    C.  Exemption 7(E) Does Not Apply to Any Specific Fields..........................18

V.  CONCLUSION ............................................................................................................21

**TABLE OF AUTHORITIES**

**CASES**

*Am. C.L. Union Found. of S. California v. United States Immigr. & Customs Enf't*, 739 F. Supp. 3d 805 (C.D. Cal.), *reconsideration denied*, 347 F.R.D. 518 (C.D. Cal. 2024) ...................................................................................... 17

*Am. C.L. Union Immigrants' Rts. Project v. United States Immigr. & Customs Enf't*, 58 F.4th 643 (2d Cir. 2023) ................................................................ 12

*Am. C.L. Union of N. Cal. v. Fed. Bureau of Investigation*, No. C 12–03728 SI, 2014 WL 4629110 (N.D. Cal. Sept. 16, 2014) ....................................... 7

*Am. C.L. Union of N. California v. United States Dep't of Just.*, 880 F.3d 473 (9th Cir. 2018) ...................................................................................... 20

*Am. First Legal Found. v. United States Dep't of Homeland Sec.*, 759 F. Supp. 3d 49 (D.D.C. 2024) ...................................................................................... 20

*Appeal, Inc. v. United States Dep't of Justice's Off. of Just. Programs*, No. 5:22-CV-02111-WLH-SK, 2024 WL 4868282 (C.D. Cal. Oct. 15, 2024) ............ 17, 19

*Associated Press v. U.S. Dep't of Def.*, 554 F.3d 274 (2d Cir. 2009) ............................. 14

*Buzzfeed, Inc. v. Dep't of Homeland Sec.*, No. 19-CV-03062 (DLF), 2023 WL 5133158 (D.D.C. Aug. 10, 2023) ................................................................ 12

*Cameranesi v. United States Dep't of Def.*, 856 F.3d 626 (9th Cir. 2017) ...................... 14

*Church of Scientology of Cal. v. Dep't of Army*, 611 F.2d 738 (9th Cir. 1979), *overruled on other grounds by Animal Legal Def. Fund v. FDA*, 836 F.3d 987 (9th Cir. 2016) ...................................................................................... 19

*Coastal Delivery Corp. v. U.S. Customs Serv.*, 272 F. Supp. 2d 958 (C.D. Cal. 2003) ...................................................................................... 21

*Ctr. for Biological Diversity v. Off. of Mgmt. & Budget*, No. C 07-4997 MHP, 2008 WL 5129417 (N.D. Cal. Dec. 4, 2008) .......................................... 8

*Ctr. For Investigative Reporting v. U.S. Customs & Border Prot.*, 436 F. Supp. 3d 90 (D.D.C. 2019) ...................................................................................... 16

*Dep't of Air Force v. Rose*, 425 U.S. 352 (1976) ................................................. 6, 7, 10

*Ecological Rights Fdn. v. U.S. Environmental Protection Agency*, No. 19-cv-394, 2021 WL 2258554 (N.D. Cal. Jun. 3, 2021) ....................................... 15

*Forest Serv. Emps. for Env't Ethics v. U.S. Forest Serv.*, 524 F.3d 1021 (9th Cir. 2008) ...................................................................................... 14

*Hamdan v. U.S. Dep't of Just.*, 797 F.3d 759 (9th Cir. 2015) ............................... 6, 7, 8

*Jud. Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141 (D.C. Cir. 2006) ...................... 7

*Kamman v. U.S. Internal Revenue Serv.*, 56 F.3d 46 (9th Cir. 1995) .............................. 7

*King v. U.S. Dep't of Just.*, 830 F.2d 210 (D.C. Cir. 1987) ............................................. 13

*Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964 (9th Cir. 2009) ................................. 6, 10

*Long v. Off. of Pers. Mgmt.*, 692 F.3d 185 (2d Cir. 2012) .............................................. 15

*Mead Data Cent., Inc. v. U.S. Dept. of Air Force*, 566 F.2d 242 (D.C. Cir. 1977) .......... 8

*Nat. Res. Def. Council, Inc. v. U.S. Dep't of Def.*, 388 F. Supp. 2d 1086
    (C.D. Cal. 2005) ......................................................................................................... 9

*News-Press v. U.S. Dep't of Homeland Sec.*, 489 F.3d 1173 (11th Cir. 2007) ............... 10

*NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214 (1976) ........................................... 18

*Our Children's Earth Found. v. Nat'l Marine Fisheries Serv.*, 85 F. Supp. 3d 1074
    (N.D. Cal. 2015) ....................................................................................................... 16

*Pac. Fisheries, Inc. v. United States*, 539 F.3d 1143 (9th Cir. 2008) ...................... 7, 8, 9

*Pomares v. Dep't of Veterans Affs.*, 113 F.4th 870 (9th Cir. 2024) .......................... 14, 16

*Reps. Comm. for Freedom of the Press v. Fed. Bureau of Investigation*, 3 F.4th
    350 (D.C. Cir. 2021) ................................................................................................. 16

*Riley v. California*, 573 U.S. 373 (2014) ....................................................................... 14

*Rojas v. Fed. Aviation Admin.*, 941 F.3d 392 (9th Cir. 2019) ....................................... 10

*Rosenfeld v. U.S. Dep't of Justice*, 57 F.3d 803 (9th Cir. 1995) ................................... 19

*Torres Consulting & L. Grp., LLC v. Nat'l Aeronautics & Space Admin.*, 666 F.
    App'x 643 (9th Cir. 2016) .................................................................................... 11, 16

*Transgender L. Ctr. v. Immigr. & Customs Enf't*, 46 F.4th 771 (9th Cir. 2022) 7, 8, 13, 15

*U.S. Dep't of State v. Ray*, 502 U.S. 164 (1991) ........................................................... 12

*U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595 (1982) ................................ 14

*Wiener v. F.B.I.*, 943 F.2d 972 (9th Cir. 1991) ......................................................... 8, 13

**STATUTES**

5 U.S.C. § 552 ......................................................................................................... passim

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Defendant United States Department of Homeland Security ("DHS") takes the extraordinary position that it is not obligated to produce *any records* in response to Professor Graeme Blair's Freedom of Information Act ("FOIA") request for information contained within fields (spreadsheet columns) that do not identify persons in the Persist dataset. This dataset, compiled by the Office of Homeland Security Statistics ("OHSS"), tracks immigration cases—including immigration encounters, arrests, detentions, removals, credible fear claims, immigration court outcomes, and more. DHS's blanket assertion that the entire Persist dataset is exempt from disclosure runs contrary to binding Supreme Court and Ninth Circuit precedent instructing courts to construe FOIA exemptions narrowly in light of the statute's broad mandate in favor of public disclosure. This Court should not be the first in the country to endorse DHS's unprecedented view that the public has no right to any of the information contained within an important government dataset. DHS has simply not met its burden to show that FOIA Exemptions 6 and 7(E) apply to the entirety of Professor Blair's request.

Ironically, it is Professor Blair, not DHS, who is concerned with protecting the identity of noncitizens subject to immigration enforcement. In his request, Professor Blair sought only non-identifying information to avoid any possible invasion of privacy. By contrast, DHS has regularly published private information—which is sometimes inaccurate—on its social media platforms and an official government website called "Arrested: Worst of the Worst," on which it posts the names and photographs of tens of thousands of noncitizens subject to immigration enforcement. In contrast to these clear privacy violations, DHS here makes the implausible claim that it cannot produce *anonymized* data, even after reasonable redactions, which is something other government agencies routinely release both under FOIA and proactively.

DHS's cherry-picked disclosures of identities of the so-called "worst of the worst" highlight the importance of providing the public with anonymized underlying data to

understand the full scope and impact of immigration enforcement and to verify the accuracy of the administration's claims about noncitizens, such as its claim that it only arrests the "worst of the worst." This information is even more critical now because DHS has stopped producing the statistical reports on immigration enforcement that it produced until early 2025.

If the requested information did include any private information, FOIA would require the agency to withhold only that information and release non-exempt information to Professor Blair. DHS has not done so here even though it concedes that not all of the information in the Persist dataset is exempt. In fact, DHS has refused to provide even the complete list of the fields (i.e. spreadsheet column names) in the Persist dataset, even though that list poses no conceivable risk to privacy. The fact that DHS failed to segregate exempt information and produce non-exempt information alone warrants denial of DHS's motion.

DHS has also failed to show that the Persist dataset was compiled for law enforcement purposes or that its disclosure would risk circumvention of law under Exemption 7(E). DHS's blanket claim of exemption to withhold the entire Persist dataset is completely unsupported by the record and binding authority.

Thus, this Court should deny DHS's motion for summary judgment and grant Professor Blair's cross-motion for partial summary judgment. Professor Blair respectfully requests that the Court order DHS to produce the Persist dataset after reasonable segregation of exempt fields (including personally identifiable information such as names, dates of birth, alien registration number, etc.). To the extent that DHS can point to any additional fields (spreadsheet columns) to be redacted beyond personally identifiable information, DHS should be ordered to provide a specific and articulable justification for the application of an exemption as to each field, and it should produce the information in all the other, non-identifying fields as required by FOIA. At a minimum, in the alternative, the Court should order DHS to produce a list of the fields and meet and confer with Professor Blair to produce a joint proposal on which, if any,

fields are exempt.

## II.    STATEMENT OF FACTS

### A.    Individual-Level Immigration Datasets Are Critical for Informing the Public About the Federal Government's Immigration Actions.

Individual-level data is necessary for tracking immigration enforcement policy. "Individual-level" data refers to a dataset (spreadsheet) in which each row corresponds to a person or an event. Plaintiff's Statement of Uncontroverted Facts ("PSUF") No. 1. Any statistic of interest to the public starts with the individual-level data. PSUF No. 2–3. The government can produce its own aggregate statistics, but those statistics reflect choices that constrain the information available. PSUF No. 4. Those aggregate statistics reveal only the calculations that the government chooses to make. *Id*.

Individual-level data is especially important in the current context due to a general lack of accurate information about the federal government's immigration enforcement policies and practices. For example, since 2025, OHSS has even stopped releasing the aggregate reports that it previously published monthly based on data in the Persist dataset. PSUF No. 5. Independent analysts, including journalists, have been able to track changes in enforcement policy comprehensively only through individual-level data. PSUF No. 6.

For instance, the New York Times was able to publish a detailed report on the effects of the Trump administration's firing of immigration judges only because it had access to individual-level data from the Executive Office for Immigration Review ("EOIR"). PSUF No. 7. Using that dataset, the Times calculated asylum grant rates for each immigration judge and showed that those rates had been cut in half under the new administration. *Id*. Without the individual-level data, this would not have been possible; EOIR publishes only basic annual statistics, not statistics by judge. PSUF No. 8.

Consider another, hypothetical, example: a government agency might report that "500,000 individuals were apprehended at the southern border last year." This is a single, summary figure. The aggregate figure of 500,000 reflects analytical choices by

the government that, without individual-level data, cannot be verified independently by the public. It tells us the overall scale of enforcement activity, but nothing about the people involved—their countries of origin, whether they were traveling with family, whether they were detained and for how long, or what happened to each of them afterward. By contrast, individual-level data underlying this statistic would consist of a separate record for each person apprehended. Such data would look something like this:

| Unique Identifier | Country of Origin | Family Status | Date of Apprehension | Outcome of Immigration Case | ... |
|---|---|---|---|---|---|
| 1abc | Honduras | Single adult | 01/20/2025 | Removed | ... |
| 2def | Venezuela | Unaccompanied child | 07/15/2025 | Granted Asylum | ... |
| ... | ... | ... | ... | ... | ... |

The aggregate figure of 500,000 might suggest a uniform picture of enforcement, but individual-level data could reveal that outcomes differ substantially by group—for example, unaccompanied minors may be processed differently from single adults, and nationals of one country may be treated differently from those of another. Individual-level data could also reveal, for instance, a sharp seasonal increase in the arrival of family units during certain months, a pattern entirely invisible in the yearly total. The possible examples are infinite. Relying on the aggregate number alone would obscure these important distinctions and leave unanswered critical questions for government accountability efforts.

As these examples illustrate, without access to the individual-level data, there is no way for the public to confirm the government's calculations or to make others. In contrast, individual-level datasets allow journalists, researchers, policymakers, and others to summarize the data in any way they choose. PSUF No. 2. Therefore, not only are averages produced by the government potentially misleading, those averages also contain orders of magnitude less information than the raw individual-level datasets that the government must release under the FOIA. PSUF No. 4.

**B.      Agencies Routinely Release Individual-Level Datasets, Like Persist, to the Public.**

Plaintiff Graeme Blair is a professor of political science at UCLA and co-directs the Deportation Data Project. PSUF No. 9. The Deportation Data Project collects, analyzes, and posts public, anonymized U.S. government immigration datasets from multiple federal agencies. PSUF Nos. 9–10. Federal government agencies regularly release individual-level datasets to the public while withholding Personally Identifiable Information ("PII"). PSUF Nos. 11–16.

EOIR, for instance, proactively releases (after receiving frequent FOIA requests) detailed case-level data on immigration court cases from the last several decades. PSUF Nos. 12–13. And the Executive Office for United States Attorneys proactively releases (again, after receiving frequent FOIA requests) monthly anonymized case-level data on federal prosecutions. PSUF No. 14. And the Bureau of Justice Statistics publishes anonymized individual-level data on crimes, arrestees, and victims. PSUF No. 15. Other agencies offer endless examples: the Department of Labor's Wage and Hour Division compliance dataset, the Small Business Administration's dataset on the Paycheck Protection Program, the Department of Veterans Affairs All Employee Survey, the Federal Emergency Management Agency's applicant-level data for individuals and households receiving disaster assistance, and the Center for Medicare and Medicaid Services dataset on the Medicare Current Beneficiary Survey. PSUF No. 16. In all these cases, the agencies have released nonidentifying fields in often large individual-level datasets to the public. PSUF No. 11–16.

**C.      DHS Is Withholding Records Responsive to Professor Blair's FOIA Request, Which Does Not Seek Identifiable Information.**

Professor Blair submitted his FOIA request to DHS on October 10, 2025, seeking "*all nonexempt* categories of records in the PERSIST dataset." PSUF No. 17 (emphasis in original). Professor Blair explained that his request "does not seek any information that could reasonably lead to the identification of an individual." PSUF No. 18. His

5

request "does *not* seek any personally identifying information, such as name, identifying numbers, address, or date of birth, nor does it seek information that could indirectly lead to identification, such as information identifying a specific place of study or employer." *Id.* (emphasis in original). In order to group rows in the spreadsheet that concern the same individuals without revealing those individuals' identities, Professor Blair requested that DHS produce the "[o]ne-time person-level identifier" contained within the Persist dataset. PSUF Nos. 19–20.

After DHS failed to respond to Professor Blair's request by the statutory deadline, Professor Blair filed suit, on January 15, 2026, to compel the release of responsive records. PSUF No. 21. DHS, through counsel, initially represented to Professor Blair that it intended to release all responsive records, including the person-level identifier, within 45 non-furlough working days. PSUF No. 22. However, in May 2026, DHS withdrew its earlier representation and informed Professor Blair that it would not provide any responsive records. PSUF No. 23. For months before suddenly changing its position in May, DHS raised no challenges to the release of the requested records. PSUF Nos. 22–23.

## III.   LEGAL STANDARD

"Government transparency is critical to maintaining a functional democratic polity, where the people have the information needed to check public corruption, hold government leaders accountable, and elect leaders who will carry out their preferred policies." *Hamdan v. U.S. Dep't of Just.*, 797 F.3d 759, 769–70 (9th Cir. 2015). FOIA "provides public access to official information 'shielded unnecessarily' from public view and establishes a 'judicially enforceable public right to secure such information from possibly unwilling official hands.'" *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 973 (9th Cir. 2009) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)).

In light of its purpose, FOIA expressly grants jurisdiction in the district courts to enjoin an agency from improperly withholding agency records. 5 U.S.C. § 552(a)(4)(B). An agency's decision to withhold information from a FOIA requester is subject to *de*

6

*novo* review. *Id.* FOIA "mandates full agency disclosure unless information is clearly exempted under one of FOIA's nine statutory exemptions." *Pac. Fisheries, Inc. v. United States*, 539 F.3d 1143, 1147 (9th Cir. 2008) (internal quotations omitted); *see also* 5 U.S.C. § 552(b)(1)-(9). Because "disclosure, not secrecy, is the dominant objective of the Act," FOIA's exemptions "must be narrowly construed." *Rose*, 425 U.S. at 361.

The government always bears the burden to show that records are subject to an exemption and can be withheld. 5 U.S.C. § 552(a)(4)(B); *Transgender L. Ctr. v. Immigr. & Customs Enf't*, 46 F.4th 771, 782 (9th Cir. 2022). Government declarations in support of withholding information "must describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemptions, and show that the justifications are not controverted by contrary evidence in the record or by evidence of bad faith." *Hamdan*, 797 F.3d at 769. An agency's accompanying affidavits or declarations must "provide[] a relatively detailed justification, specifically identif[y] the reasons why a particular exemption is relevant and correlat[e] those claims with the particular part of a withheld document to which they apply." *Jud. Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141, 146 (D.C. Cir. 2006) (internal quotations omitted). These materials must not "rely upon conclusory and generalized allegations of exemptions." *Am. C.L. Union of N. Cal. v. Fed. Bureau of Investigation*, No. C 12–03728 SI, 2014 WL 4629110, at *3 (N.D. Cal. Sept. 16, 2014) (citing *Kamman v. U.S. Internal Revenue Serv.*, 56 F.3d 46, 48 (9th Cir. 1995)).

## IV.   ARGUMENT

### A.   DHS's Blanket Withholding is Unprecedented and Legally Erroneous.

DHS takes the extraordinary position that the entire Persist dataset is exempt from disclosure under FOIA. The agency has made no attempt to reasonably segregate any exempt information contained within the Persist dataset, even though it is required to do so under FOIA, and even though it expressly concedes that not all information in the

Persist dataset is nonexempt. *See* Def's Mot., Dkt. No. 20, at 18.[1] On this basis alone, this Court should deny DHS's motion for summary judgment, grant Professor Blair's cross-motion, and order DHS to reasonably segregate exempt information.

FOIA provides that any "reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b). Therefore, the agency must "establish that all reasonably segregable portions of a document have been segregated and disclosed." *Pac. Fisheries, Inc.*, 539 F.3d at 1148. "[A]n agency cannot justify withholding an entire document simply by showing that it contains some exempt material." *Mead Data Cent., Inc. v. U.S. Dept. of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). Where the agency declaration provides only "boilerplate segregability language without a 'detailed justification' for the withholding of the portions of exempt records," it denies Plaintiff both "the opportunity to argue for [the document's] release and the court the opportunity to consider the reasonableness of the withholding." *Ctr. for Biological Diversity v. Off. of Mgmt. & Budget*, No. C 07-4997 MHP, 2008 WL 5129417, at *9 (N.D. Cal. Dec. 4, 2008). The agency must also "document any inability on its part to parse the records, such that incomplete segments of records would be rendered meaningless if disclosed." *Id.*

The Ninth Circuit has "repeatedly held that '[i]t is reversible error for the district court to simply approve the withholding of an entire document without entering a finding on segregability, or the lack thereof, with respect to that document.'" *Transgender L. Ctr.*, 46 F.4th at 785 (citing *Hamdan*, 797 F.3d at 779). A district court must make "*specific* findings on the issue of segregability." *Id.* (citing *Wiener v. F.B.I.*, 943 F.2d 972, 988 (9th Cir. 1991)).

DHS's failure to segregate non-exempt material is apparent in at least two respects. First, DHS's brief and declaration make no mention of any attempt to segregate

---

[1] Page references to docket entries correspond to the ECF-stamped page numbers.

8

non-exempt information within the Persist dataset. *See generally* Def's Mot., Dkt. No. 20 & Declaration of Marc Rosenblum ("Rosenblum Decl."), Dkt. No. 20-4. Courts have repeatedly rejected agencies' attempts to fully withhold documents without conducting an adequate segregability analysis, and the Court here cannot evaluate DHS's categorical conclusions without a specific, nonconclusory explanation of why each portion of the Persist dataset is exempt from disclosure or cannot be reasonably segregated. *See, e.g., Pac. Fisheries, Inc.*, 539 F.3d at 1149–50 (finding "too conclusory" agency's statement that it had "attempted to make all reasonably segregable non-exempt portions . . . available to plaintiff"); *Nat. Res. Def. Council, Inc. v. U.S. Dep't of Def.*, 388 F. Supp. 2d 1086, 1105 (C.D. Cal. 2005) (denying summary judgment for the Department of Defense where it merely appended a boilerplate statement that it disclosed all reasonably segregable information).

Second, as explained in more detail below, it is obvious, and DHS concedes, that not *all* the information within the Persist dataset is exempt from disclosure. DHS admits that there are "categories in the Persist dataset [that] are not plainly exempt under any FOIA exemptions." Def's Mot, Dkt. No. 20, at 18. Even putting aside DHS's erroneous invocation of Exemptions 6 and 7(E), there can be no question, for instance, that the names of the 380 fields (columns) contained within the Persist dataset are releasable under FOIA. In fact, DHS has disclosed several of them in its brief without explaining why it has not disclosed the others. *See* Defendant's Statement of Uncontroverted Facts ("DSUF"), Dkt. No. 20-3, ¶¶ 13–14 (listing a handful of examples of fields, including, among others, criminal history, country of citizenship, apprehension method, apprehension date, detention facility, and release reason).[2]

Accordingly, the Court should deny DHS's motion for summary judgment and grant Professor Blair's cross-motion on the basis that DHS failed to reasonably segregate non-exempt information.

---

[2] Plaintiff requested that DHS share the list of fields within the Persist dataset, but DHS refused. PSUF No. 24.

### B.    Exemption 6 Does Not Apply to Professor Blair's Request.

DHS claims that it can withhold the entire Persist dataset pursuant to FOIA Exemption 6, which allows the government to withhold "personnel and medical and similar files the disclosure of which would constitute a *clearly unwarranted* invasion of personal privacy." 5 U.S.C. § 552(b)(6) (emphasis added).[3] DHS invokes Exemption 6 here without mentioning that it routinely publishes private information of individuals targeted by its enforcement efforts in public communications, even when the accuracy of that information has been called into question. PSUF Nos. 25–28. In any event, blanket withholding of the entire dataset is inappropriate here.

Under Exemption 6, the Court must consider "whether release of the information would constitute a clearly unwarranted invasion of the person's privacy." *Rojas v. Fed. Aviation Admin.*, 941 F.3d 392, 404 (9th Cir. 2019) (internal quotations omitted). In making this inquiry, the Court must first consider whether the withheld information implicates more than a "de minimis" privacy interest, and then balance an individual's privacy interest against "the extent to which disclosure of the information sought would shed light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." *Id.* at 405; *see Lahr*, 569 F.3d at 973 (A court "must balance the privacy interest protected by the exemptions against the public interest in government openness that would be served by disclosure."). The legislative history of FOIA indicates that "Congress's use of the 'clearly unwarranted' language 'was a considered and significant determination,' and 'the expression of a carefully considered congressional policy favoring disclosure." *News-Press v. U.S. Dep't of Homeland Sec.*, 489 F.3d 1173, 1197 (11th Cir. 2007) (internal citations omitted). Indeed, "Congress [] made clear that nonconfidential matter was not to be insulated from disclosure merely because it was stored by an agency in its 'personnel' files." *Rose*, 425 U.S. at 372.

---

[3] Notably, DHS does not claim that the information is protected from disclosure by Exemption 7(C), which contains "broader language" applicable to privacy-related concerns for records compiled for law enforcement purposes. *Lahr*, 569 F.3d at 974.

10

FOIA requires a narrow application of Exemption 6 tailored to balance any privacy risks against the public interest advanced by disclosure. Professor Blair's FOIA request sufficiently addresses any privacy concerns by not seeking any PII (directly or indirectly), and the public interest in these records cannot be overstated.

### 1. The Privacy Interest is *De Minimis* Once PII is Redacted.

Under the first prong of the Exemption 6 analysis, "the agency must prove that there is more than a *de minimis* personal privacy interest." *Torres Consulting & L. Grp., LLC v. Nat'l Aeronautics & Space Admin.* ("*Torres*"), 666 F. App'x 643, 645 (9th Cir. 2016). In *Torres*, the plaintiff sought a contractor's payroll records from NASA under FOIA. *Id*. at 644. Like DHS here, NASA "totally withheld" the requested records, in part under Exemption 6, and the district court affirmed the agency's decision. *Id*. On appeal, the FOIA requester argued that there is no privacy interest in the documents "once all of the information that identifies a particular individual—names, addresses and social security numbers—has been redacted." *Id*. at 645. Interpreting decades of Supreme Court case law, the Ninth Circuit reversed the district court and concluded that Exemption 6 covers "only information that is linked to an identifiable person" *Id*. Therefore, "any privacy interest in [] data after names, addresses, and social security numbers are redacted is trivial" and FOIA requires disclosure. *Id*.

As in *Torres*, the privacy interests at stake, if any, are trivial here. Professor Blair takes extremely seriously the privacy interests of individuals who are targets for immigration enforcement. That is precisely why he specified in his request that he "does *not* seek any personally identifying information, such as name, identifying numbers, address, or date of birth, nor does [he] seek information that could indirectly lead to identification, such as information identifying a specific place of study or employer." PSUF No. 18 (emphasis in original). Instead, Professor Blair specifically requested that the agency instead produce a "person-level identifier," which replaces an individual's identifiable information with an alphanumeric code that is anonymous but unique to that individual. PSUF Nos. 19–20.

Such identifiers sufficiently minimize the risk of identification. *See Buzzfeed, Inc. v. Dep't of Homeland Sec.*, No. 19-CV-03062 (DLF), 2023 WL 5133158, at *5 (D.D.C. Aug. 10, 2023) (denying summary judgment to the agency where "defendants have failed to provide sufficient information to assess the privacy interest implicated by potential alternative unique identifiers" under Exemption 7(C), which imposes a lower standard on the agency than Exemption 6); PSUF 29, 31, 33.[4] Indeed, government agencies routinely release individual-level data with unique person-level identifiers after properly withholding any fields containing PII. PSUF Nos. 11–16.

The Supreme Court's decision in *U.S. Dep't of State v. Ray* is also instructive here. 502 U.S. 164 (1991). There, the Court explained that certain Haitians interviewed by the State Department had a substantial privacy interest in the nondisclosure of their names in transcripts and summaries from those interviews. *See Ray*, 502 U.S. at 175–77. The Court noted that "if the summaries are released without the names redacted, highly personal information regarding marital and employment status, children, living conditions and attempts to enter the United States, would be linked publicly with particular, named individuals." *Id*. at 175–76. That detailed personal information was much more likely to lead to reidentification than the very limited information requested by Professor Blair. But the Court nonetheless went on to conclude that "disclosure of such personal information constitutes only a *de minimis* invasion of privacy when the identities of the interviewees are unknown." *Id*. at 176.

DHS's arguments to the contrary are unpersuasive. DHS hypothesizes that it *may* be possible to "accurately re-identify individuals" even after removing direct PII, *see*

---

[4] In *ACLU v. ICE*, the government did not even raise Exemption 6, and the Second Circuit therefore did not consider its application; presumably, everyone in that case took for granted that the dataset was not subject to the exemption. *See* Def's Mot., Dkt. No. 20, at 14. The court did, however, cite several cases holding that replacing personally identifiable information with unique identifiers sufficiently protected privacy interests. *See Am. C.L. Union Immigrants' Rts. Project v. United States Immigr. & Customs Enf't*, 58 F.4th 643, 659, n. 20 (2d Cir. 2023). Professor Blair cited the *ACLU* case in his FOIA request only to support his position that DHS is required to provide unique identifiers that correspond with exempt information.

12

Def's Mot., Dkt. No. 20, at 13–15, which even on its own terms is insufficient to meet the agency's burden under Exemption 6. *See Transgender L. Ctr.*, 46 F.4th at 781 (holding that agency justifications for withholding records must be reasonably specific and nonconclusory). The categories of information that DHS claims are "indirect identifiers" hardly make it easy to identify a person: "sex, criminal history, country of citizenship, apprehension method, apprehension date, detention facility, case status, detention status, book-in date, book-out date, release reason, entry date, case date, hearing location, country of birth, and immigration status." Def's Mot., Dkt. No. 20, at 13. Reidentification is possible only if a public data source exists that includes both anonymized attributes in the dataset that are unique to the individual and the person's actual identity. PSUF No. 29. But most of these pieces of information are known only to the noncitizen and the government itself; it is implausible that individuals' identities could be revealed through the disclosure of this information alone. PSUF Nos. 29–33. DHS admits as much, conceding that it is "unlikely that a single person could pour through millions of data points . . . to re-identify individuals protected by unique identifiers." Def's Mot., Dkt. No. 20, at 15.

DHS goes on to suggest that "the advent of AI, and its continued development, makes such a[] [re-identifying] endeavor achievable," *id*., but it does not provide sufficient factual support to meet its burden. *See Wiener*, 943 F.2d at 979 ("The explanations offered [by the agency to justify withholding] are precisely the sort of '[c]ategorical description[s] of redacted material coupled with categorical indication of anticipated consequences of disclosure' the D.C. Circuit properly rejected in *King* as 'clearly inadequate.' (citing *King v. U.S. Dep't of Just.*, 830 F.2d 210, 224 (D.C. Cir. 1987))). For support, DHS cites a study from 2019 which it claims found that "AI had an accurate re-identification rate of 99.98 percent." Def's Mot., Dkt. No. 20, at 15. The dataset analyzed by that study contained multiple highly specific and widely available demographic attributes (such as date of birth and zip code) that Professor Blair did not seek here precisely because he recognized that such attributes may lead to

reidentification. *See* PSUF No. 34. Moreover, that study was conducted before the development and release of generative AI models like ChatGPT. PSUF No. 35.

To the extent that any demographic information is included in the Persist dataset, DHS can—and should—withhold any fields which, if disclosed, would constitute a clearly unwarranted invasion of personal privacy. Enforcement information, however, is known only to the noncitizen and the government. PSUF Nos. 30–31. AI may make computation more efficient, but it cannot generate access to data sources that do not exist or are held only by the government. PSUF No. 32. DHS's argument is thus purely speculative. With the inclusion of unique identifiers and without highly specific demographic information, any systematic reidentification of noncitizens in the dataset is exceedingly unlikely. PSUF No. 33.

The cases DHS cites only support Professor Blair's position. Each of those cases concerned the nondisclosure of very limited information that posed a clear risk of an invasion of personal privacy. *See* Def's Mot., Dkt. No. 20, at 15–17 (citing *Pomares v. Dep't of Veterans Affs.*, 113 F.4th 870, 885 (9th Cir. 2024) (holding that agency could withhold email addresses, but not names, of lobbyists under Exemption 6); *U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 602 (1982) (remanding to lower courts to consider whether release of citizenship information of two specific, named, individuals would constitute a clearly unwarranted invasion of personal privacy); *Forest Serv. Emps. for Env't Ethics v. U.S. Forest Serv.*, 524 F.3d 1021, 1028 (9th Cir. 2008) (finding that names of agency employees were properly exempt under Exemption 6); *Cameranesi v. United States Dep't of Def.*, 856 F.3d 626, 646 (9th Cir. 2017) (same for names of students and instructors); *Associated Press v. U.S. Dep't of Def.*, 554 F.3d 274, 292 (2d Cir. 2009) (finding that Exemption 6 was properly applied to names and addresses)).[5]

In *Long v. Off. of Pers. Mgmt.*, which DHS cites in its brief, *see* Def's Mot., Dkt.

---

[5] *Riley v. California*, 573 U.S. 373 (2014), which DHS also relies on in its brief, Def's Mot., Dkt. No. 20, at 16–17, is inapplicable because it is a Fourth Amendment case analyzing whether law enforcement may conduct a warrantless search of digital information on a cell phone.

No. 20, at 14–15, the plaintiff sought a database from the Office of Personnel Management ("OPM") containing 100 data fields regarding the federal civilian workforce. 692 F.3d 185, 188 (2d Cir. 2012). Like the Persist dataset, the OPM dataset constituted "millions upon millions of data elements." *Id*. at 192. However, unlike here, OPM released *all* of the fields to the requester except names and some "duty-station information" (only six data fields) for workers in a handful of specific agencies and occupations. *Id*. at 189. In upholding the exemption as to duty-station information, the court noted that "[r]edaction of names goes a long way toward protecting against surveillance and publicity those things that are generally treated as nobody else's business." *Id*. at 196. The court went on to explain that OPM had sufficiently demonstrated, through its affidavits, that disclosure of duty-station information could reasonably lead to identification of street addresses of those employees' workplaces and possibly subject them to harassment and violence. *Id*. This is a far cry from DHS's position that it will not release *any* information contained within the Persist dataset due to a purely speculative privacy risk.[6]

To the extent that there are specific fields within the Persist dataset which, if disclosed, would lead to foreseeable safety threats or other privacy-related harms to individuals within the dataset, DHS has failed to meet its burden of establishing such harms. *See* 5 U.S.C. § 552(a)(8)(A)(i)(I); *Transgender Law Ctr*., 46 F. 4th at 782. Agencies have an "independent and meaningful burden," to "'identify specific harms to the relevant protected interests that it can reasonably foresee would actually ensue from disclosure of the withheld materials' and 'connect[] the harms in [a] meaningful way to the information withheld.'" *Ecological Rights Fdn. v. U.S. Environmental Protection Agency*, No. 19-cv-394, 2021 WL 2258554, at *1 (N.D. Cal. Jun. 3, 2021) (*quoting Ctr. For Investigative Reporting v. U.S. Customs & Border Prot.*, 436 F. Supp. 3d 90, 106

---

[6] To the extent that there are specific fields within the Persist dataset that would lead to identification of the workplace or street address of a noncitizen, Professor Blair did not and does not seek those fields. PSUF No. 18.

15

(D.D.C. 2019)). Here, DHS's brief and supporting declaration are devoid of any specific foreseeable harm analysis as to *any* of the withheld fields of information, let alone analysis that "'specifically focuses'" its foreseeable harm demonstration "'on the information at issue in [the documents] under review.'" *Reps. Comm. for Freedom of the Press v. Fed. Bureau of Investigation*, 3 F.4th 350, 370 (D.C. Cir. 2021) (citation omitted).

In sum, DHS has not cited any authority to suggest that an agency can categorically apply Exemption 6 to an entire dataset that contains perhaps hundreds of variables that likely raise only trivial privacy concerns. Therefore, "FOIA demands disclosure, without regard to any showing of public interest." *Torres*, 666 F. App'x at 645 (9th Cir. 2016) (internal quotations omitted).

### 2. Disclosure of the Requested Records Would Advance a Significant Public Interest.

Even assuming that DHS had raised a non-trivial privacy interest in withholding the entire Persist dataset—which it has not—the public interest in disclosure of the Persist dataset is significant and would outweigh those minor concerns. If the agency meets its burden to show a non-trivial privacy interest, "the Court then engages in a balancing approach, asking whether the privacy interests the agency identified outweigh the public's interest in the disclosure of information that would shed light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." *Our Children's Earth Found. v. Nat'l Marine Fisheries Serv.*, 85 F. Supp. 3d 1074, 1085 (N.D. Cal. 2015) (internal quotations omitted). In evaluating the public interest in disclosure, courts must consider "the general public interest [advanced by disclosure] in 'understanding . . . the operations or activities of the government.'" *Pomares*, 113 F.4th at 885 (citation omitted).

DHS flippantly dismisses the public interest that disclosure of the requested records would advance. There is manifestly a substantial public interest in data about the government's immigration enforcement efforts. In support of his request, Professor Blair

16

included a list of 125 media articles citing enforcement data made public by the Deportation Data Project. PSUF No. 36. This included articles from major national and local news organizations, such as the CBS News, Bloomberg, New York Times, Washington Post, Los Angeles Times, and NPR. *Id*. As this court has explained, "[w]here the purpose for collecting this [ ] data was to increase accountability and transparency, it follows that disclosing this data serves public interest, as intended." *Appeal, Inc. v. United States Dep't of Justice's Off. of Just. Programs*, No. 5:22-CV-02111-WLH-SK, 2024 WL 4868282, at *8 (C.D. Cal. Oct. 15, 2024).

Moreover, although the Deportation Data Project has obtained data from DHS's subagencies and EOIR, none of those datasets provides the full picture of immigration enforcement because they are not connected to each other. PSUF Nos. 37–38. The Persist dataset is unique in that it tracks the full lifecycle of immigration cases. *Id*. Therefore, disclosure of the dataset would allow the public to answer countless questions that currently available data cannot answer. PSUF No. 38. To give just three examples, the Persist dataset would be the only data source to allow analysis of how likely people granted bond by an Immigration Judge were to be in fact released by ICE; how long individuals apprehended by Customs and Border Protection and transferred to ICE custody were held in detention; and how frequently individuals ordered removed by an Immigration Judge were in fact deported by ICE. *Id*. Such information is not available in separate subagencies' siloed datasets, and such information will substantially contribute to "the public's right to know 'what their government is up to.'" *Am. C.L. Union Found. of S. California v. United States Immigr. & Customs Enf't*, 739 F. Supp. 3d 805, 826 (C.D. Cal.), *reconsideration denied*, 347 F.R.D. 518 (C.D. Cal. 2024) (citation omitted). "[T]he public interest in disclosure is undoubtedly high. This is particularly so where much of the data requested has, evidently, not always been made publicly available in other ways." *Appeal, Inc.*, 2024 WL 4868282, at *7.

DHS's suggestion that aggregated data—which it has not produced in this case, and which it stopped publicly releasing in 2025—provides the same information is

17

inaccurate. Def's Mot., Dkt. No. 20, at 17–18. As discussed, aggregated information, unlike individual-level data, provides only a handpicked compilation of statistics that can paint a false or misleading picture of the full scope of the government's immigration actions. *See supra* Sec. II.A. Permitting DHS to withhold individual-level data, and only produce aggregate statistics, would allow the government to avoid releasing most of the relevant information. That would undermine FOIA's central purpose: "to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1976). Furthermore, FOIA imposes an obligation on agencies to reproduce information in the form or format sought by the requester. 5 U.S.C. § 552(a)(3)(B). DHS cannot evade its responsibility to produce records in the form requested by Professor Blair. The fact that OHSS has stopped releasing the aggregate reports that it previously published monthly based on the Persist dataset only underscores the significant public interest in the requested records. PSUF No. 5.

In sum, Professor Blair recognizes that redaction of certain categories of information—including name, date of birth, alien registration number, and similar PII—is appropriate and necessary to protect privacy interests. However, DHS has failed to carry its burden to justify withholding substantial parts, let alone all, of the Persist dataset. At a minimum, if DHS can point to any additional fields to be redacted beyond PII, DHS must provide a specific and articulable privacy concern as to each field, and that their disclosure would lead to foreseeable harm to the privacy interests of those individuals included in the dataset.

### C.     Exemption 7(E) Does Not Apply to Any Specific Fields.

DHS makes a half-hearted attempt to argue that the Persist dataset is additionally exempt from disclosure pursuant to FOIA Exemption 7(E), which covers information "compiled for law enforcement purposes" that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could

18

reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).

As a threshold matter, to qualify for withholding under Exemption 7(E), the withheld information must be compiled for law enforcement purposes. *Church of Scientology of Cal. v. Dep't of Army*, 611 F.2d 738, 748 (9th Cir. 1979), *overruled on other grounds by Animal Legal Def. Fund v. FDA*, 836 F.3d 987 (9th Cir. 2016). It is not enough for a law enforcement agency to simply assert that records were compiled for law enforcement purposes; the agency must provide "sufficient evidence in the record to warrant a finding" of such a purpose. *Id.* And the Ninth Circuit does not allow the Government to invoke Exemption 7 if the record suggests that "the asserted [law enforcement] purpose is pretextual or wholly unbelievable." *Rosenfeld v. U.S. Dep't of Justice*, 57 F.3d 803, 815 (9th Cir. 1995) (internal quotations omitted).

Here, DHS admits that the Persist dataset is compiled "strictly for statistical purposes," and that OHSS does not "provide direct operational support to DHS and DOJ components." Rosenblum Decl., Dkt. No. 20-4, ¶ 10. Unlike other DHS subagencies that have a clear law enforcement mandate, OHSS's "mission is to foster transparency and data-driven homeland security decision-making by analyzing and disseminating timely, objective Department of Homeland Security (DHS) data and statistics." PSUF No. 39. "Data being collected by agencies that could be considered law enforcement does not amount to the data collection being for the *purposes* of law enforcement." *Appeal, Inc.*, 2024 WL 4868282, at *6 (holding that data on deaths in custody that "was collected [by the Department of Justice] expressly for research and statistical purposes" was not compiled for law enforcement purposes). For this reason alone, this Court should find that Exemption 7(E) is inapplicable.[7]

Second, "Exemption 7(E) only exempts investigative techniques not generally known to the public." *Rosenfeld*, 57 F.3d at 815. DHS claims that the "Persist dataset

---

[7] Moreover, as mentioned above, *supra* n.3, DHS does not claim that the Persist dataset is covered by Exemption 7(C), which is a privacy-related exemption for law enforcement records. This further suggests that the Persist dataset was not compiled for law enforcement purposes.

can be used to track the Border Patrol Sector, OFO Field Office, and ICE Area of Operations in which individuals have been arrested or found inadmissible." DSUF, Dkt. No. 20-3, ¶ 25. Much of that information is already publicly available. For example, U.S. Customs and Border Protection publishes a map showing the number of apprehensions by Border Patrol Sector and OFO Field Office. PSUF No. 40. And the White House maintains a website called aliens.gov on which it publishes city-by-city information on ICE arrests. PSUF No. 41. Because this information is already publicly known and the Persist dataset "lack[s] any 'detailed, technical analysis' of these investigatory techniques," Exemption 7(E) does not apply. *Am. C.L. Union of N. California v. United States Dep't of Just.*, 880 F.3d 473, 492 (9th Cir. 2018).

Lastly, DHS again invokes this exemption without any attempt to segregate nonexempt information. Even if the exemption were relevant at all, DHS would need to provide sufficient evidence that each field in the dataset would risk circumvention of law to meet its burden. For instance, it may well be that "disclosure of the precise addresses at which non-citizens targeted for removal 'may be located' would reveal procedures for law enforcement investigations—that is, the specific targets of future enforcement actions—that could invite circumvention of the law." *Am. First Legal Found. v. United States Dep't of Homeland Sec.*, 759 F. Supp. 3d 49, 69 (D.D.C. 2024). However, the agency must "explain how disclosure of only the city, state, and country would pose such a risk. If [DHS] discloses that a non-citizen resides in Los Angeles, California, for example, that disclosure would not reveal anything about how [DHS] went about collecting that information or how the agency intends to use it." *Id*. In order to support its withholding, the agency must offer "examples or otherwise explain (in non-conclusory terms) how disclosure of that limited information could reveal law enforcement techniques and procedures." *Id*. Nothing in DHS's declaration suggests any risk of circumvention of law, let alone risks with respect to specific withheld fields. *See generally* Rosenblum Decl. Unlike in *Coastal Delivery Corp. v. U.S. Customs Serv.*, the agency here has simply not met its burden "to establish that disclosure of this

information could reasonably risk circumvention of the law." 272 F. Supp. 2d 958, 964 (C.D. Cal. 2003).

Because the Persist dataset is not compiled for law enforcement purposes, Exemption 7(E) does not apply. The Court should deny DHS's motion for summary judgment and grant Professor Blair's cross-motion on this basis alone. Alternatively, and at a minimum, the Court should require DHS to identify the specific fields that it considers exempt under Exemption 7(E) with sufficient evidence to warrant such a finding.

## V.    CONCLUSION

For the foregoing reasons, the Court should deny DHS's motion for summary judgment and grant Professor Blair's cross-motion for summary judgment.

Dated: August 6, 2026                    Respectfully submitted,

                                         LAW OFFICE OF AMBER QURESHI, LLC
                                         HOQ LAW APC

                                         By: _/s/ Amber Qureshi_____
                                              AMBER QURESHI
                                              Attorneys for Plaintiff


## CERTIFICATE OF COMPLIANCE WITH L.R. 11-6.2

The undersigned, counsel of record for Plaintiff, certifies that this brief contains 6,997 words, which complies with the word limit of L.R. 11-6-1.


                                         _/s/ Amber Qureshi_____
                                          AMBER QURESHI
                                          Attorney for Plaintiff

21